UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| L.H., *on behalf of T.L.H., Jr.*, *a minor*, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:14-cv-00939-JMS-TAB |
| | ) |
| CAROLYN W. COLVIN, *Commissioner of the Social Security Administration*, | ) |
| | ) |
| Defendant. | ) |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff L.H.,[1] on behalf of T.L.H., Jr. ("T.L.H."), a minor, appeals the denial of T.L.H.'s application for supplemental security income ("SSI") benefits. L.H. applied for benefits on T.L.H.'s behalf on January 4, 2012, alleging a disability onset date of September 1, 2009. The claim was initially denied on February 21, 2012, and upon reconsideration. Administrative Law Judge Gregory M. Hamel (the "ALJ") held a hearing on February 8, 2013, and issued a decision on March 1, 2013, concluding that T.L.H. was not disabled. The Appeals Council denied a request for review, rendering the ALJ's decision the final decision of the Defendant, Commissioner of the Social Security Administration ("Commissioner") for the purposes of judicial review. 20 C.F.R. § 404.981. L.H. filed this action on behalf of T.L.H. under 42 U.S.C. § 405(g), requesting that the Court review the ALJ's denial.

---

[1] To protect the minor claimant's privacy pursuant to Federal Rule of Civil Procedure 5.2, the Court will also refer to the plaintiff pursuing this action on T.L.H.'s behalf by her initials.

# I.
## STANDARD OF REVIEW

"Social security disability benefits are designed for disabled workers, but low-income parents or guardians may obtain them on behalf of disabled children as well." *Keys v. Barnhart*, 347 F.3d 990, 991 (7th Cir. 2003). For a child to be considered disabled, it must be shown that the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

"[S]ince disabled children generally do not have a work history, the structure of the disability program for them is necessarily different from that for adults, except in cases in which the child has a 'listed impairment,' that is, an impairment that would entitle the adult to disability benefits without any further inquiry into his ability to perform his past work or some other work; the child is treated the same in such a case." *Keys*, 347 F.3d at 991-92 (citing 20 C.F.R. § 416.924(d)). If the child is "not so seriously disabled as is implied by being found to have a listed impairment, then it must be determined whether [the child] is nevertheless severely limited in functioning in specified areas of life activity such as concentration and communication." *Id.* at 992.

To determine whether the child is disabled, the ALJ considers all relevant evidence and the combined effect of any impairments on the child's overall health and functioning. 20 C.F.R. § 416.924(a). The regulations set forth a three-step process for evaluating child disability claims. 20 C.F.R. § 416.924(a).

At Step One, if the child is doing substantial gainful activity, as defined by the regulations, the child is not disabled and the evaluation stops. 20 C.F.R. § 416.924(a)-(b). If the child is not doing substantial gainful activity, the evaluation proceeds to Step Two. 20 C.F.R. § 416.924(a).

At Step Two, the ALJ considers the child's physical or mental impairments to see if the child has an impairment or combination of impairments that is severe. 20 C.F.R. § 416.924(a). If the impairment or impairments are not severe, the child is not disabled and the evaluation stops. 20 C.F.R. § 416.924(a). If the impairment or impairments are severe, the evaluation proceeds to Step Three. 20 C.F.R. § 416.924(a).

At Step Three, the ALJ considers whether the child has an impairment or impairments that meets, medically equals, or functionally equals a listing. 20 C.F.R. § 416.924(a). If the child has such an impairment and it meets the duration requirement, the child is disabled. 20 C.F.R. § 416.924(a). If the child does not have such an impairment, or if it does not meet the duration requirement, the child is not disabled. 20 C.F.R. § 416.924(a).

A child's impairments will functionally equal a listing if they result in either a "marked" limitation in at least two of six enumerated domains of functioning or an "extreme" limitation in at least one of the domains. *Buckhanon ex rel. J.H. v. Astrue,* 368 F. App'x 674, 679 (7th Cir. 2010) (citing 20 C.F.R. § 416.926a). The six domains are as follows: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. 20 C.F.R. § 416.926a. A "marked" limitation interferes "seriously" with a child's ability to initiate, sustain, or complete activities in the domain, and an "extreme" limitation interferes "very seriously." 20 C.F.R. § 416.926a(e)(2).

This Court's role in reviewing a disability decision is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Moreover, "[a]n ALJ may not select and discuss only that evidence that favors [his] ultimate conclusion, but must articulate, at some minimum level, [his] analysis of the evidence to allow the [Court] to trace the path of [his] reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the denial of benefits. Otherwise, the Court must remand the matter back to the SSA for further consideration; only under rare circumstances can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

**II.
RELEVANT BACKGROUND[2]**

T.L.H. was thirteen years old when an application for SSI benefits was filed on his behalf in January 2012. [Filing No. 18-2 at 14.] T.L.H. has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and psychotic disorder, among others. [*See, e.g.*, Filing No. 18-2 at 14.]

---

[2] The briefs regarding L.H.'s request for review detail facts about medical treatment that T.L.H. has received. The Commissioner does not dispute the facts presented. Because those facts implicate sensitive and otherwise confidential medical information concerning T.L.H., the Court will

Using the sequential evaluation set forth by the SSA, the ALJ issued a decision on March 1, 2013, finding as follows:

- At Step One, the ALJ concluded that T.L.H. had not engaged in substantial gainful activity since January 4, 2012, the application date. [Filing No. 18-2 at 14.]

- At Step Two, the ALJ concluded that T.L.H. had the following severe impairments: generalized anxiety disorder, ADHD, depressive disorder, psychotic disorder, elevated blood pressure, and asthma. [Filing No. 18-2 at 14.]

- At Step Three, the ALJ concluded that T.L.H. did not have an impairment, either singly or in combination, that met or medically equaled the severity of a listed impairment. [Filing No. 18-2 at 15.] In reaching this conclusion, the ALJ considered Listings 112.03 (schizophrenic, paranoid, and other psychotic disorders), 112.04 (mood disorder), and 112.11 (ADHD). [Filing No. 18-2 at 15-16.]

- The ALJ further determined that T.L.H. did not have an impairment or combination of impairments that functionally equals the severity of a listed impairment. [Filing No. 18-2 at 16-26.] Specifically, the ALJ concluded that T.L.H. had either a less than marked limitation or no limitation in each of the six functional domains. [Filing No. 18-2 at 16-26.]

- Because of these findings, the ALJ concluded that T.L.H. was not disabled. [Filing No. 18-2 at 26-27.]

---

incorporate the facts by reference herein and articulate material facts as needed to resolve the parties' arguments.

L.H. requested that the Appeals Council review the ALJ's decision, but that request was denied on April 8, 2014. [Filing No. 18-2 at 2-4.] That decision is the final decision of the Commissioner for purposes of judicial review, and L.H. now seeks relief from this Court. [Filing No. 1.]

## III.
### DISCUSSION

L.H. argues that the ALJ's decision should be reversed for two related reasons.[3] The Court will address each in turn.

**A.  Whether Substantial Evidence Supports the ALJ's Equivalence Analyses**

*1.  Medical Equivalence*

L.H. argues that substantial evidence does not support the ALJ's conclusion that T.L.H.'s impairments do not meet or medically equal Listing 112.03. [Filing No. 22 at 9-11.] To demonstrate that this is so, L.H. details record evidence that she maintains shows that Listing 112.03 was met and points to portions of the ALJ's reasoning that she contends are erroneous. [Filing No. 22 at 9-11.] The Commissioner responds that the ALJ adequately explained why the evidence did not support a conclusion that T.L.H. met or medically equaled Listing 112.03. [Filing No. 27 at 6-8.] L.H. replies that she clearly set forth "the requirements for Listing 112.03 and cited the evidence which proved each element," which demonstrates that the ALJ's conclusion "was contrary to the evidence." [Filing No. 30 at 3-5.]

---

[3] The briefs submitted by L.H.'s counsel, as this Court has noted in several other cases, contain numerous, sporadic references to seemingly random propositions of law or facts without any explanation as to their relevance or applicability in this particular case. Such undeveloped arguments are waived. *See Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988) (noting that "an issue expressly presented for resolution is waived if not developed by argument") (citation omitted).

The Court defers to an ALJ's factual determinations if they are supported by substantial evidence. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citing 42 U.S.C. § 405(g)). The ALJ "is not required to discuss every piece of evidence, but must build a logical bridge from evidence to conclusion." *Id.* (collecting cases). The ALJ, however, "may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004)).

The ALJ concluded that T.L.H. did not meet Listing 112.03. [Filing No. 18-2 at 15.] Listing 112.03 provides:

> 112.03 Schizophrenic, Delusional (Paranoid), Schizoaffective, and Other Psychotic Disorders: Onset of psychotic features, characterized by a marked disturbance of thinking, feeling, and behavior, with deterioration from a previous level of functioning or failure to achieve the expected level of social functioning.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented persistence, for at least 6 months, either continuous or intermittent, of one or more of the following:
>
> > 1. Delusions or hallucinations; or
> >
> > 2. Catatonic, bizarre, or other grossly disorganized behavior; or
> >
> > 3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech; or
> >
> > 4. Flat, blunt, or inappropriate affect; or
> >
> > 5. Emotional withdrawal, apathy, or isolation;
> >
> > AND
>
> B. . . . [F]or children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.03.

The ALJ set forth the requirements of Listing 112.03 and concluded that T.L.H. did not meet them. [Filing No. 18-2 at 15.] The ALJ noted that T.L.H. was diagnosed with psychotic disorder, but that "symptoms of psychosis are rarely identified" in the medical records. [Filing No. 18-2 at 15.] Specifically, the ALJ noted the following: (1) T.L.H.'s clinical social worker noted in December 2011 that T.L.H. had experienced no recent hallucinations; (2) medical records from February 2012 "specifically noted that there was no evidence of psychosis"; (3) although T.L.H. testified that he has heard voices, the record "does not contain any indication that [he] has responded to internal stimuli and shows rather that he was actively participating in sports and playing games with his peers at school"; (4) T.L.H. stated that "he heard voices or saw shadows only two times in over a 12-month period despite approximately weekly meetings with social workers or nurse practitioners"; and (5) "no treating or examining doctor has actually mentioned any psychotic symptoms in any of the recent treatment records." [Filing No. 18-2 at 15.]

L.H. does not provide the Court with a basis to conclude that substantial evidence does not support the ALJ's decision that T.L.H. does not meet or medically equal Listing 112.03. L.H.'s primary argument to the contrary—that there is evidence showing T.L.H. has had hallucinations—is nothing more than a request for the Court to reweigh the evidence. The ALJ addressed the very evidence cited by L.H., which shows that during T.L.H.'s almost weekly meetings with a social worker, he stated only on two occasions in a twelve-month period that he had experienced hallucinations. [Filing No. 18-2 at 15 (citing Filing No. 18-8 at 24, 110).] In the ALJ's view, this evidence was insufficient to establish persistent hallucinations for a six-month period, as is required to meet subsection (A) of Listing 112.03. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.03(A).

This Court cannot "reweigh evidence . . . or, in general, substitute [its] own judgment for that of the [ALJ]." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Given the relatively sparse evidence of hallucinations—that is, two in a one-year period[4]—it was well within the bounds of reason for the ALJ to conclude that there was insufficient evidence that T.L.H. experienced "persisten[t]" hallucinations "for at least 6 months."[5] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.03(A). Therefore, the Court cannot disturb the ALJ's conclusion that T.L.H. did not meet Listing 112.03. *See Young*, 362 F.3d at 1101 (stating that the Court's task "is limited to determining whether the ALJ's factual findings are supported by substantial evidence," and that "[e]vidence is substantial if a reasonable person would accept it as adequate to support the conclusion").[6]

---

[4] L.H. argues that there were three instances of hallucinations in a one-year period, rather than two, as stated by the ALJ. [Filing No. 22 at 11; Filing No. 30 at 4-8.] But the record does not establish this to be so. As acknowledged by the ALJ and the parties, T.L.H. reported hallucinations on May 3, 2012, and December 4, 2012. [Filing No. 18-8 at 24, 110.] The evidence of a third episode to which L.H. points is not evidence of a hallucination within that one-year time-frame: on December 1, 2011, T.L.H admitted having a hallucination earlier in his life, but "denie[d] seeing recent hallucinations." [Filing No. 18-7 at 54.] This argument is therefore meritless.

[5] L.H. argues that the ALJ applied a more stringent standard than Listing 112.03 requires because the ALJ stated that there must be evidence showing "six months or more" of hallucinations rather than, as stated in the Listing, hallucinations "for at least 6 months, either continuous or intermittent." [Filing No. 22 at 11.] The Court does not view these two formulations as meaningfully different, and in any event, the ALJ's actual analysis reveals that he applied the correct standard.

[6] L.H. did not provide evidence that the other necessary criteria found in subsection (B) of Listing 112.03 were met. L.H argues that the evidence showing T.L.H. had marked impairments in the six functional equivalence domains—an evaluation of the six functional areas by his middle school teacher—demonstrates that he meets the subsection (B) criteria, [Filing No. 22 at 11], but the Court disagrees. First, the six functional domains are not the same as the subsection (B) criteria, which means that an evaluation of the six functional domains does not demonstrate that the subsection (B) criteria are met. *Compare* 20 C.F.R. § 416.926a, *with* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.03(B). Second, even if the categories overlap, as discussed below, the ALJ discounted the middle school teacher's evaluation and there is no basis to reverse the ALJ's judgment on that matter. Accordingly, L.H.'s position regarding the subsection (B) criteria is meritless.

### 2. *Functional Equivalence*

L.H. argues that the ALJ erred in concluding that T.L.H.'s impairments did not functionally equal the severity of the listings. [Filing No. 22 at 18.] Specifically, L.H. asserts that T.L.H.'s middle school teacher's evaluation showed that he has marked limitations in all six functional domains. [Filing No. 22 at 18 (citing Filing No. 18-8 at 124).] The Commissioner responds that the ALJ adequately explained why T.L.H. did not have marked limitations in any of the six functional domains. [Filing No. 27 at 8-12.] As to the teacher's evaluation, the Commissioner contends that the ALJ "reasonably discounted it in light of the fact that the opinion offered no support or explanation and the fact that the record evidence supported far fewer limitations than the outlier opinion suggested." [Filing No. 27 at 12.] In reply, L.H. asserts that both the ALJ and the Commissioner "rely only on their layperson's opinions to reject [the teacher's evaluation]." [Filing No. 30 at 5.]

A child's impairments will functionally equal a listing if they result in either a "marked" limitation in at least two of six enumerated domains of functioning or an "extreme" limitation in at least one of the domains. *Buckhanon*, 368 F. App'x at 679 (citing 20 C.F.R. § 416.926a). A "marked" limitation interferes "seriously" with a child's ability to initiate, sustain, or complete activities in the domain, and an "extreme" limitation interferes "very seriously." 20 C.F.R. § 416.926a(e)(2).

The ALJ assessed each of the six functional domains in detail and concluded that T.L.H. did not have marked limitations in any of the six domains. [Filing No. 18-2 at 16-26.] In doing so, the ALJ explained that he discounted the evaluation of T.L.H.'s middle school teacher because the teacher simply checked a blank on a form indicating that T.L.H. had marked limitations in each of the six domains but "provided no explanation." [Filing No. 18-2 at 18.] "Moreover," the ALJ

continued, "this assessment is in great contrast to other school records which show that the claimant . . . participates in class, asks relevant questions, and gets along with his peers normally." [Filing No. 18-2 at 18 (citing Filing No. 18-8 at 124, 139-140.] The ALJ also pointed out that another one of T.L.H.'s teachers concluded that he had "no limitation in all domains." [Filing No. 18-2 at 18.]

Substantial evidence supports the ALJ's discounting of T.L.H.'s middle school teacher's evaluation. The ALJ was faced with two inconsistent assessments from T.L.H.'s teachers. The ALJ explained that he discounted the evaluation on which T.L.H. strongly relies because there was no accompanying explanation for why T.L.H. has marked limitations in the six functional areas and that such significant limitations are contrary to evidence that T.L.H. functions relatively well in school. [Filing No. 18-2 at 18.] Again, L.H.'s position amounts to nothing more than a request for the Court to substitute its own judgment for that of the ALJ,[7] which the Court cannot do. *See Young*, 362 F.3d at 1101. Because "a reasonable person would accept [the evidence] as adequate to support the conclusion" reached by the ALJ regarding the middle school teacher's evaluation, the ALJ's assessment of functional equivalence cannot be disturbed. *Id.*

---

[7] L.H. argues that the ALJ erroneously refused to accept his Global Assessment Functioning ("GAF") score as evidence of disability. [Filing No. 22 at 12.] The ALJ noted T.L.H.'s GAF score of 45-50 when discussing his functional ability. [Filing No. 18-2 at 18.] In a footnote, the ALJ stated that the Commissioner has not endorsed the use of GAF scores in SSA programs and that the scores do not directly correlate with the severity of a mental disorder; but the ALJ did not state, as alleged by L.H., that the GAF score would not be considered. [Filing No. 18-2 at 18 n.1.] In any event, while a GAF score may be considered by an ALJ, the Seventh Circuit has held "that a low GAF score alone is insufficient to overturn an ALJ's finding of no disability." *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

B.  **Whether Expert Testimony was Required Regarding Equivalence**

L.H. argues that the ALJ was required to summon a medical expert to testify whether T.L.H. met or medically equally Listing 112.03. [Filing No. 22 at 16-17.] Specifically, L.H. contends that the ALJ could not rely on the agency physician's disability determinations because they were completed on February 20, 2012 and May 2, 2012, which prevented them from reviewing "treatment and evaluation evidence from [August 6, 2012 through January 22, 2013]." [Filing No. 22 at 16.]

The Commissioner responds that agency physician determinations are sufficient for the ALJ to meet his obligation of considering expert evidence regarding equivalence. [Filing No. 27 at 4.] This remains true, says the Commissioner, even if there is new medical evidence from the period after the agency physicians made their determinations, unless the new medical evidence might cause the initial opinions to change, which is not the case here. [Filing No. 27 at 4-6.]

L.H. shifts her argument in reply, focusing on functional equivalence rather than medical equivalence. Specifically, L.H. asserts that the Commissioner's argument "overlooks that among the unreviewed items of evidence [by the agency physicians] was the middle school teacher's [January 22, 2013] evaluation . . . finding the claimant had [m]arked impairments in all six functional areas." [Filing No. 30 at 7.] Therefore, L.H. contends that the ALJ was required to obtain an expert to evaluate this evidence. [Filing No. 30 at 7.]

"Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett*, 381 F.3d at 670. An ALJ's reliance on disability forms filled out by agency physicians "satisf[ies] the ALJ's duty to consider an expert's opinion on medical equivalence." *Id.* at 671; *see Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (holding that the disability forms filled out by the agency physicians "conclusively establish

that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review") (citation and quotation marks omitted); *see also* S.S.R. 96-6p at *3. When there is evidence in the record relevant to medical equivalence that is dated after the agency physicians made their determinations, "an ALJ [must] secure another expert opinion only when, 'in the opinion of the administrative law judge,' new evidence might cause the initial opinion to change." *Buckhanon*, 368 Fed. Appx. at 679 (quoting S.S.R. 96-6p at *4).

As an initial matter, the Court does not read the ALJ's decision as relying on the agency physicians' reports in determining medical equivalence. The ALJ addressed the agency physicians' disability determinations with respect to *functional* equivalence, but not when discussing *medical* equivalence. [*Compare* Filing No. 18-2 at 15-16, *with* Filing No. 18-2 at 19.] Therefore, L.H.'s attempt to undermine the ALJ's reliance on the agency physicians' opinions because the opinions failed to account for record evidence dated after their opinions were issued misses the mark altogether, and cannot serve as a basis to reverse the ALJ's decision. In L.H.'s reply brief, however, she switches from contesting medical equivalence to functional equivalence, arguing that the agency physicians' assessment of the six functional areas cannot be relied on because "among the unreviewed items [by the agency physicians] was the middle school teacher's [January 22, 2013] evaluation finding that the claimant had [m]arked impairments in all six functional domains." [Filing No. 30 at 7.] Out of an abundance of caution, and because the Commissioner addresses this argument on its merits, the Court will assess whether the ALJ erred in relying on the agency physician's assessments of functional equivalence.[8]

---

[8] Because in the end this argument is meritless, and because the parties do so, the Court will assume without deciding that the standards applying to expert testimony on medical equivalence also apply to functional equivalence.

In assessing T.L.H.'s functional equivalence, the ALJ gave "great weight" to the agency physicians' disability determinations, both of which concluded that T.L.H.'s impairments did not meet, medically equal, or functionally equal a listing. [Filing No. 18-2 at 19 (citing Filing No. 18-7 at 59-64, 74-79.] In her opening brief, L.H. faults the agency physicians' reports because there was evidence—which she failed to specify or cite—dating from after their reports were completed. [Filing No. 22 at 16.] After the Commissioner pointed out in response that the ALJ need only update the experts' opinions in the face of new evidence when the new evidence might cause the initial opinions to change, [Filing No. 27 at 4-6], L.H. pointed to only one such piece of evidence in reply, [Filing No. 30 at 7]. Specifically, L.H. argues that T.L.H.'s middle school teacher's January 22, 2013 evaluation was contrary to the agency physicians' disability determinations. [Filing No. 30 at 7 (citing Filing No. 18-8 at 124).] But as discussed above, the ALJ adequately explained why the middle school teacher's evaluation was given little weight. [*See* Filing No. 18-2 at 18 (noting that the middle school teacher simply checked a blank on a form indicating that T.L.H. had marked limitations in each of the six functional domains without further explanation).] Given this, the ALJ reasonably determined that he could rely on the agency physicians' disability determinations regarding functional equivalence. *See Buckhanon*, 368 Fed. Appx. at 679. Accordingly, reversal in not warranted on this basis.

## IV.
### CONCLUSION

For the reasons stated, the decision below is **AFFIRMED**. Final judgment will be entered accordingly.

Date: May 7, 2015

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**